IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DAVID ESCAMILLA | § | |
| | § | |
| Plaintiff, | § | |
| vs. | § | Case No. 4:12CV634 |
| | § | |
| M2 TECHNOLOGY, INC. | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATIONS OF
## UNITED STATES MAGISTRATE JUDGE

Now before the Court is Plaintiff's Motion for Preliminary Injunction (Dkts. 3 & 6). Having considered the record in this case and the arguments, evidence and testimony presented at the hearing held on August 21 and August 22, 2013, the Court finds that the motion for injunctive relief should be DENIED.

Plaintiff David Escamilla brings this suit claiming trademark infringement, trade name infringement and unfair competition under the Lanham Act and related state laws. Plaintiff claims that he has used his "M2" trademark and trade name for more than 20 years "to provide, as his primary business, enterprise solutions and related services in the information technology industry." Dkt. 1 at ¶2. Plaintiff alleges that Defendant M2 Technology, Inc. has adopted an identical "M2" mark "to provide some of the same types of enterprise solutions and related services," infringing upon his senior rights. Dkt. 1 at ¶3. In his complaint, Plaintiff asserts the following claims: (1) Federal Unfair competition and False Designation of Origin (15 U.S.C. § 1125(a)); (2) Federal Trademark Infringement (15 U.S.C. § 1114, *et seq*.); (3) Trade Name Infringement (15 U.S.C. §

1

1125(a)); (4) Violation of Anti-Cybersquatting Consumer Protection Act, (5) Common Law Trademark Infringement and Unfair Competition; (6) Injury to Business Reputation and Trade Name (Tex. Bus. & Com. Code 16.29); and (7) Texas Unfair Business Practices Act (Tex. Bus. & Com. Code 1741). Pro se Plaintiff also seeks an award of attorney's fees. *See* Dkt. 1.

As part of his complaint and by separate motion, Plaintiff seeks injunctive relief enjoining Defendant from (1) advertising, marketing, selling or rendering any product or service or otherwise using the M2 trademark or trade name in any form; (2) representing to any person or entity that they have authority or license to use the M2 trademark symbol; (3) representing to any other person or entity that Defendants and/or their products and services are in any manner associated with, connected to, or affiliated with Plaintiff; and (4) using any URL's incorporating the M2 term. Dkt. 1 at ¶71(a); *see also* Dkt. 6-1.

In response, Defendant argues that ninety-nine percent (99%) of Defendant's business comes from a narrow, specialized market – the Federal Government and correctional facilities – that is entirely separate from the commercial marketplace in which M2 Software, Inc. ("M2 Software"), Plaintiff's exclusive licensee under the M2 mark, exists. Defendant argues that it and Plaintiff are completely different companies, providing vastly different products and services to totally different customers and customer types via entirely different marketing channels and that in over 13 years of concurrent use of M2 marks, there has been not a single instance of actual confusion between Defendant's Federal Government and correctional facility customers and the film, music, and entertainment companies that do business with Plaintiff's software development company.

## INJUNCTION STANDARD

Under Rule 65 of the Federal Rules of Civil Procedure, "[e]very order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail ... the act or acts sought to be restrained...." FED. R. CIV. P. 65(d). Plaintiffs seeking injunctive relief must show:

(1) a substantial likelihood of success on the merits,

(2) a substantial threat that plaintiff will suffer irreparable harm if the injunction is not granted,

(3) that the threatened injury outweighs any damage that the injunction might cause the defendant, and

(4) that the injunction will not disserve the public interest.

*Palmer v. Waxahachie Indep. Sch. Dist.*, 579 F.3d 502, 506 (5th Cir. 2009); *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). Plaintiff bears the burden to prove all four requirements in order to be entitled to injunctive relief. *Palmer*, 579 F.3d at 506.

## EVIDENCE PRESENTED & ANALYSIS

The Court held a hearing on Plaintiff's motion on August 21 and 22, 2013. At the hearing, both Plaintiff and Defendant's founder, representative, and namesake, Mark Martinez, testified. Both sides also offered evidence in support of their respective positions.

Having considered the record before it, the Court finds that Plaintiff has failed to show that he is entitled to injunctive relief. Specifically, the Court finds that Plaintiff has not sustained his

burden in showing a likelihood of success on the merits of his infringement claims.[1]

To prevail on a claim of trademark infringement under the Lanham Act, a plaintiff must show (1) he possesses a valid mark; and (2) the defendant's use of the plaintiff's trademarks creates a likelihood of confusion as to source, affiliation, or sponsorship. *National Business Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 532 (5th Cir. 2012). The likelihood of confusion must be probable not just possible. *Board. of Supervisors for LSU A&M Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008). Because "[c]ontext is especially critical," courts must "consider the marks in the context that a customer perceives them in the marketplace." *Scott Fetzer Co. v. House of Vacuums Inc.,* 381 F.3d 477, 485 (5th Cir. 2004). In addition to any claims under federal law, the likelihood of confusion standard also governs a plaintiff's claims for trademark infringement and unfair competition under Texas law. *Id.* at 484. *See also Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 236, n7 (5th Cir. 2010) (noting that the analysis for claims under the Lanham Act will be dispositive of any corresponding claims under Texas law because a "trademark infringement and unfair competition action under Texas common law presents essentially no difference in issues than those under federal trademark infringement actions") (internal citations and quotations omitted).

Courts often look to the following "digits of confusion" to determine whether a likelihood of confusion exists: (1) the type of trademark allegedly infringed, (2) the similarity between the two

---

[1]Because the Court is not convinced there is a likelihood of confusion here, the Court is not addressing the validity of the underlying assignment of interests here or Plaintiff David Escamilla's standing to bring these claims. The findings herein shall not be construed as a determination in either way as to the validity of the assignment and assume Plaintiff's rights in the M2 mark.

marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, and (7) any evidence of actual confusion, and (8) the degree of care exercised by potential purchasers. *National Business Forms & Printing, Inc.*, 671 F.3d at 532. These "digits of confusion" are not exhaustive, and no single factor is dispositive. *Id.* Whether there is a likelihood of confusion is a question of fact. *Id.*

Having heard the evidence and testimony presented, as well as the arguments of the parties, the Court finds that none of the digits of confusion point to a likelihood of confusion in Plaintiff's favor. Defendant's use of the M2 Technology mark is not likely to cause confusion, mistake or deception as to the source or origin of the parties' products or services. Specifically, the Court finds:

A. M2 Technology supplies OEM primarily to the government contractors. Its business requires personnel who have security access. The business provided by M2 Technology could be fairly characterized as matters involving national defense.

B. On the other hand, Plaintiff's business M2 Software has only a handful of operative licenses and its business is directed to the entertainment media.

C. The real business of M2 Software, as testified by Mr. Escamilla, is to aggressively go after entities who use his mark and provide value to his long term objective of selling M2 Software. In the end analysis, the company has little business and has taken little effort to expand beyond the media field, although Mr. Escamilla did testify that he has recently expanded into the health care field by associating with a doctor in Illinois.

D. M2 Technology customers are not customers of M2 Software. About 97% of M2 Technology's business is the United States government.

E. There is little likelihood that the United States government would mistakenly believe that M2 Technology's services originate from, are licensed by, or are otherwise associated with the Plaintiff or M2 Software.

F. M2 Technology must register in certain databases with the government. Defendant demonstrated that a number of companies in the databases, all of which are approved to do business with the government, have M2 in their name.

G. M2 Software is not in this governmental database.

H. There are a number of companies nationwide that carry the M2 mark of some nature.

I. M2 Technology sells no products under the M2 mark. All products are sold through Hewlett Packard or other hardware manufacturers. Most of the services are also provided through the manufacturers or M2 Technology employees who possess the requisite certification or security clearance.

J. There is no evidence that Plaintiff has suffered damages as a result of the existence of M2 Technology.

K. There has been no showing that Plaintiff has suffered loss of control over goodwill and reputation as a result of M2 Technology's business.

L. Plaintiff offered no evidence of what a reasonable royalty would be even if the use of M2 Technology's mark was authorized by Plaintiff.

M. M2 Technology has used the mark for over 13 years and for almost eight of those

years with no opposition by Plaintiff.

N. The Court finds no evidence that M2 Technology has engaged in any bad faith conduct in its business affairs.

O. Plaintiff has offered no evidence that his business reputation and trade name have been injured pursuant to 16.29 of the Texas Business and Commerce Code.

P. Likewise, there has been no showing that M2 Technology engaged in any false, misleading or deceptive acts or practices in conduct of trade or commerce within this state.

Issuing a preliminary injunction in this case is not warranted. "In a trademark infringement action, the paramount question is whether one mark is likely to cause confusion with another." *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 226 (5th Cir. 2009). Plaintiff has simply not shown that there is a probable likelihood of confusion as to his M2 mark and Defendant's use of M2 in the governmental and correctional facilities industry. Nor has Plaintiff shown any harm – irreparable or otherwise – caused to him by Defendant's use of the M2 name in its business.

Further, the Court finds that enjoining Defendant from the use of the M2 name in its specialized industry in which evidence was presented as to the licenses and contracts issued to it would likely damage Defendant. And finally, the Court finds that issuing a preliminary injunction would not serve the public interest but rather would harm public interest in that consequences of such an injunction could go as far to interfere with existing government contracts directly or indirectly comprise issues of national security.

A preliminary injunction "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries a burden of persuasion." *Black Fire Fighters Ass'n v. City of Dallas*, 905 F.2d 63, 65 (5th Cir. 1990) (per curiam).

Plaintiff's Motion for Preliminary Injunction (Dkts. 3 & 6) should be DENIED.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C).

Failure to timely file written objections to the proposed findings and recommendations contained in this report shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 26th day of August, 2013.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE