**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| DAVID ESCAMILLA | § | |
| | § | |
| Plaintiff, | § | |
| vs. | § | Case No. 4:12CV634 |
| | § | |
| M2 TECHNOLOGY, INC. | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Now before the Court is Defendant M2 Technology, Inc.'s Motion for Summary Judgment (Dkt. 93). As set forth below, the Court finds that the motion should be GRANTED.

### BACKGROUND

This case is the third in a long series of suits pending in this District involving M2 Software, Inc., David Escamilla ("Escamilla"), and M2 Technology, Inc. and the use of an M2 mark. A brief overview of the procedural histories of those cases is instructive in understanding the motion before the Court.

In the first case, Cause Number 4:11cv516 ("the First Suit"), Escamilla sued M2 Technology, Inc. The Court ordered that M2 Software, Inc. (which owned the M2 mark at issue) be joined as a necessary party, Escamilla refused, and the case was dismissed without prejudice on September 28, 2012. The Fifth Circuit affirmed the dismissal, finding in an unpublished opinion that the primary mark-holder was a required party to the action under Rule 19. *David Escamilla dba M2 Intellectual Prop. Assets v. M2 Tech., Inc.*, 536 F. App'x 417, 422 (5th Cir. 2013) ("Because M2 Software and

1

Escamilla are legally distinct persons, the requirement that M2 Software be joined is not satisfied by Escamilla's participation in the lawsuit."). Within six days of the Court's report and recommendation of dismissal in the First Suit, Escamilla – as the sole shareholder of M2 Software, Inc.– purportedly assigned all rights and causes of action held by the corporation to himself individually.

On July 20, 2012, M2 Technology, Inc. sued M2 Software, Inc. in Cause Number 4:12cv458 ("the Second Suit"). Although served, M2 Software, Inc. did not make an appearance through counsel, and M2 Technology, Inc. moved for default judgment. Escamilla filed a motion to intervene. The Court denied that motion and granted default declaratory judgment in favor of M2 Technology, Inc. on September 30, 2013. The Court's final judgment declared that M2 Technology Inc.'s use of the M2 mark does not violate M2 Software's rights under the Lanham Act or several other statutes and awarded M2 Technology Inc. its attorneys' fees and costs. The Fifth Circuit affirmed the final judgment in the Second Suit on October 20, 2014. *See M2 Tech., Inc. v. M2 Software, Inc.*, 589 Fed. App'x 671 (5th Cir. 2014).

On October 5, 2012, after the Second Suit was filed and before final judgment was entered in it, Escamilla filed this lawsuit against M2 Technology, Inc. ("the Third Suit"), claiming to be the party holding full authority and standing to assert the claims set forth in his prior suit regarding the M2 mark. On December 12, 2013, after the Court had previously denied Escamilla's request for preliminary injunction, the Court granted M2 Technology Inc.'s motion to stay this Third Suit, pending final disposition of the Second Suit. In the Court's order staying this Third Suit, the Court noted the potential of *res judicata* and collateral estoppel as well as the possibility of inconsistent

rulings. Dkt. 83. The underlying suit was thus stayed pending exhaustion of appellate remedies in the Second Suit.[1]

On January 26, 2015, the stay in this matter was lifted after the Fifth Circuit's judgment was issued affirming the default judgment in the Second Suit. Dkt. 92. Shortly thereafter, Defendant filed the underlying motion for summary judgment. After Plaintiff complained that all appellate remedies had not yet been exhausted in the Second Suit, the case was again stayed and Plaintiff's summary judgment response deadline abated, pending an appeal to the U.S. Supreme Court. Dkt. 97. On June 17, 2015, the stay in this Third Suit was lifted after the U.S. Supreme Court denied rehearing and all appellate remedies were fully and finally exhausted in the Second Suit. Dkt. 107.

On July 6, 2015, counsel appeared on behalf of Plaintiff Escamilla in this suit and Plaintiff, through counsel, filed his response to the motion for summary judgment. Defendant filed a reply on July 16, 2015, and the matter is now ripe for resolution.

### EVIDENCE PRESENTED

In support of its motion, Defendant offers the following evidence: (1) Exhibit A: M2 Technology, Inc.'s Complaint for Declaratory Judgment in the Second Suit (4:12cv458); (2) Exhibit B: Escamilla's Complaint and Application for Preliminary and Permanent Injunctive Relief in the Third Suit (4:12cv634); (3) Exhibit C: the Court's January 22, 2014 Final Judgment in the Second Suit (4:12cv458); (4) Exhibit D: the Fifth Circuit's October 20, 2014 Opinion in Cause Nos. 13-

---

[1]During the stay, the Fifth Circuit considered Escamilla's appeal of the Court's denial of his Motion for Preliminary Injunction in this suit. On September 9, 2014, the Fifth Circuit Court of Appeals affirmed the denial of injunctive relief in *David Escamilla v. M2 Technology, Inc., Does 1-20*, No. 14-40030, and judgment was issued as a mandate on November 6, 2014. *See* Dkt. 90.

41060 and 14-40192, *M2 Technology, Inc. v. M2 Software, Inc.*, affirming the Final Judgment in the Second Suit; (5) Exhibit E: the Fifth Circuit's July 16, 2013 Opinion in Cause No. 12-41183, *David Escamilla dba M2 Intellectual Property Assets v. M2 Technology, Inc.*, affirming the dismissal of the First Suit; (6) Exhibit F: the undersigned's Report and Recommendation of dismissal in the First Suit (4:11cv516); (7) Exhibit G: the Trademark Assignment Agreement by and between M2 Software, Inc. and David Escamilla executed on July 12, 2012; (8) Exhibit H: Declaration of David Escamilla submitted in First Suit (4:11cv516); (9) Exhibit I: Escamilla's Brief filed in the appeal of the Second Suit; (10) Exhibit J: pages from M2 Software, Inc.'s Response in Opposition to Plaintiff's Petition for Fees and Costs filed in the Second Suit (4:12cv458); (11) Exhibit K: responsive briefing filed by Escamilla in appeal of Second Suit; (12) Exhibit L: Fifth Circuit opinion in *White v. Fox*, 576 Fed App'x 327 (5th Cir. 2014); (13) Exhibit M: September 30, 2013 Order Denying Motion for Reconsideration, and Memorandum Adopting in Part Report and Recommendation of the United States Magistrate Judge and Order Granting in Part Petition for Fees and Costs entered in Second Suit (4:12cv458); and (14) Exhibit N: July 19, 2013 Report and Recommendation of United States Magistrate Judge entered in Second Suit (4:12cv458). Dkts. 93-1–93-14. Defendant also attaches to its summary judgment reply Fifth Circuit and U.S. Supreme Court records denying rehearing in the appeal of the Second Suit as well as the Trademark Trial and Appeal Board's order of January 23, 2011 resuming USPTO proceedings. *See* Dkt. 17-1–17-2.

In support of his summary judgment response, Plaintiff offers the following evidence: (1) Exhibit 1: Declaration of David Escamilla; (2) Exhibit 2: copy of electronic database records of the United States Patent and Trademark Office regarding M2 trademark; (3) Exhibit 3: deficiency notice

sent by Clerk of Court in Second Suit (4:12cv458) regarding over length filing; (4) Exhibit 4: portion of a January 15, 2010 USPTO decision regarding M2 Technology, Inc. registration of M2 mark; (5) Exhibit 5: excerpts from materials submitted by M2 Technology, Inc. to USPTO in July 2010; (6) Exhibit 6: copies of orders and complaint from *Higher Logic, LLC v. David Escamilla and M2 Software, Inc.*, Case No. 1:12cv1153 in the United States District Court, Eastern District of Virginia, Alexandria Division; (7) Exhibit 7: a copy of summons and return of service filed by M2 Technology, Inc. in Second Suit (4:12cv458) on August 31, 2012; (8) Exhibit 8: copy of portions of the court reporter transcript of a March 12, 2013 hearing in Second Suit (4:12cv458) and Third Suit (4:12cv634); (9) Exhibit 9: copy of March 30, 2013 letter from M2 Software, Inc. signed by Escamilla referencing 4:11cv516 (First Suit), 4:12cv458 (Second Suit), and 4:12cv634 (Third Suit); (10) Exhibit 10: copy of portions of the court reporter transcript of August 21, 2013 preliminary injunction hearing in Third Suit (4:12cv634); (11) Exhibit 11: excerpts from M2 Technology, Inc.'s August 9, 2013 Opposition to Plaintiff's Motion for Preliminary Injunction in Third Suit (4:12cv634); (12) Exhibit 12: excerpts from M2 Technology, Inc.'s May 19, 2014 appellee's brief in Appeal No. 14-40030 before the United States Court of Appeals for the Fifth Circuit (Third Suit); (13) Exhibit 13: excerpts from M2 Technology, Inc.'s March 31, 2014 appellee's brief in Appeal No. 13-41060 before the United States Court of Appeals for the Fifth Circuit (Second Suit); (14) Exhibit 14: proposed preliminary injunction order filed on October 12, 2012 by Escamilla in Third Suit (4:12cv634); (15) Exhibit 15: M2 Technology, Inc.'s March 31, 2014 appellee's brief in Appeal No. 13-41060 before the United States Court of Appeals for the Fifth Circuit (Second Suit); (16) Exhibit 16: excerpts of M2 Technology, Inc.'s October 1, 2012 Response in Opposition to Motion to

Intervene, Motion to Dismiss and for Sanctions filed in Second Suit (4:12cv458); and (17) Exhibit 17: excerpts from M2 Technology Inc.'s Application for Default Judgment in Second Suit (4:12cv458). Dkts. 109-1–109-17.

## ANALYSIS

In the motion, Defendant argues that *res judicata* requires entry of judgment in favor of M2 Technology, Inc., based on the final judgment in favor of M2 Technology, Inc. in the mirror-image declaratory judgment Second Suit. Plaintiff argues that his coercive claims in this Third Suit are not mirror-images of the declaratory judgment in the Second Suit and that *res judicata* simply is not an issue here.

"The preclusive effect of a prior federal court judgment is control by federal *res judicata* rules." *Ellis v. Amex Life Ins. Co.*, 211 F.3d 935, 937 (5th Cir. 2000). Although the Court looks to the evidentiary record to determine whether it applies to the facts at hand, the *res judicata* effect of a prior judgment is a question of law. *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 466 (5th Cir. 2013). The Fifth Circuit has explained the doctrine of *res judicata* as follows:

> The term "res judicata" is often used to describe two discrete preclusive doctrines: res judicata and collateral estoppel. These doctrines relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication. Under the doctrine of res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. The bar prevents relitigation of all issues that were or could have been raised in the previous action. In contrast, under the doctrine of collateral estoppel, the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action.

*U.S. v. Davenport*, 484 F.3d 321, 325-26 (5th Cir. 2007) (internal citations, quotations and

alterations omitted).

*Res judicata* applies when: (1) the parties in the prior and the present suit are identical; (2) a court of competent jurisdiction rendered the prior judgment; (3) the prior judgment was final and on the merits; and (4) the plaintiff raised the same claim or cause of action in both suits. *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009). Claim preclusion, or *res judicata*, bars the litigation of claims that either have been litigated or should have been raised in an earlier suit. *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004). "If the cases are based on the same nucleus of operative facts, the prior judgment's preclusive effect extends to all rights the original plaintiff had with respect to all or any part of the transaction, or series of connected transactions, out of which the original action arose." *Davenport*, 484 F.3d 321, 326 (5th Cir. 2007) (internal citations and alterations omitted). "When two suits proceed simultaneously, as in this case, *res judicata* effect is given to the first judgment rendered." *Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 500 (5th Cir. 2004).

### Court of Competent Jurisdiction and Final Judgment

There is no question that a court of competent jurisdiction – this Court – rendered the judgment in the Second Suit or that it was final and on the merits. That the judgment was a default judgment does not render it of no import for *res judicata* purposes.

"[A] default judgment is a final judgment on the merits and has a preclusive effect under *res judicata.*" *West Coast Distributing, Inc. v. Pearce*, 2010 WL 145283, 4 (N.D. Tex. 2010). Indeed, a "judgment is no less *res judicata* because it was obtained by default, absent any proof of fraud, collusion, or lack of jurisdiction." *Moyer v. Mathas*, 458 F.2d 431, 434 (5th Cir. 1972) (citing

*Morris v. Jones,* 1946, 329 U.S. 545, 67 S. Ct. 451, 91 L. Ed. 488 (1947)); *see also In re*

*Montgomery*, 200 Fed. App'x 320, 322 (5th Cir. 2006) (the doctrine of collateral estoppel applies

to default judgments).  Such is the governing precedent because "*[r]es judicata* depends not on

whether a party actually avails himself of an opportunity to litigate but on the much more basic issue

of whether the party had such an opportunity."  *Montgomery v. Pope*, 2006 WL 6562084, 1 (S.D.

Tex. 2006).

 Here, the record conclusively establishes that the defaulting party in the Second Suit – M2

Software, Inc. – had the opportunity to litigate the prior suit but declined to do so because it was

required to appear and defend the claims against it through counsel.  As to fraud or collusion in

obtaining the prior default judgment, there nothing in the record that would evidence that; and, again,

the default judgment was a result only of a corporate entity's refusal to obtain counsel – despite

repeated warnings from this Court – to proceed in its defense.

 Moreover, this Court's final judgment was affirmed by the Fifth Circuit Court of Appeals in

a lengthy 9-page opinion, and all appellate remedies have been exhausted.  That opinion addressed

any challenges to the Court's jurisdiction to enter a default judgment.  The Fifth Circuit explained:

> In declaratory-judgment cases, we determine federal-question jurisdiction from
> the face of the well-pleaded complaint in the coercive action the
> declaratory-judgment defendant could have brought.  *New Orleans & Gulf Coast
> Ry. Co. v. Barrois*, 533 F.3d 321, 329 (5th Cir. 2008).  In its declaratory-judgment
> complaint, M2 Technology alleged that M2 Software owned the M2 mark and
> could have brought a coercive action for trademark infringement.  M2 Software's
> claim that it does not own the M2 mark is insufficient to defeat jurisdiction.
> Instead, that contention merely shows that, had M2 Technology failed to prove
> M2 Software's ownership, and had the Lanham Act not provided standing for a
> non-exclusive licensee (a question we need not decide today), M2 Technology

would have lost on the merits, not for lack of jurisdiction. FN7 **Consequently, the federal courts have subject-matter jurisdiction over this case.**

FN7. *See Bell v. Hood*, 327 U.S. 678, 682, 66 S. Ct. 773, 90 L. Ed. 939 (1946) ("Jurisdiction ... is not defeated ... by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction.").

*M2 Technology, Inc. v. M2 Software, Inc.*, 589 Fed. App'x 671, 676 (5th Cir. 2014) *cert. denied sub nom. Escamilla v. M2 Tech., Inc.*, 135 S. Ct. 1895, 191 L. Ed. 2d 763 (2015) *reh'g denied*, 135 S. Ct. 2854 (2015) (emphasis added). Therefore, the Court finds that the judgment in the Second Suit was rendered by a court of competent jurisdiction and was final and on the merits. These two elements of *res judicata* are thus established.

*Identical Parties*

As to whether the parties are identical, the inquiry is a bit more complex. It is undisputed that M2 Technology, Inc. was the plaintiff in the first suit and is Defendant here. M2 Technology, Inc.'s named opponent in each suit was not, however, identical. Even so, the inquiry does not end.

The identity of parties element can be satisfied if the defendants in the two cases are in privity. *Russell v. SunAmerica Secs., Inc.*, 962 F.2d 1169, 1173 (5th Cir. 1992). "The concept of privity refers to parties in interest, *i.e.*, those parties whose interests are so closely aligned that a judgment against one should be preclusive as to all." *Hawkins ProCuts, Inc. v. DJT Hair, Inc.*, 1997 WL 446458, at *4 (N.D. Tex. 1997). Thus, if Plaintiff here (David Escamilla) was in privity with Defendant in the prior suit (M2 Software, Inc.), *res judicata* bars Plaintiff's claims.

A non-party will be found to be in privity with a party for *res judicata* purposes in three narrow circumstances: (1) if he has succeeded to the party's interest in property; (2) if he controlled the prior litigation; or (3) if the nonparty's interests were adequately represented by a party to the original suit. *White v. Fox*, 576 Fed. App'x 327, 331 (5th Cir. 2014). Defendant argues that each of these applies. The Court agrees.

Critically, the Fifth Circuit held in affirming the final judgment in the Second Suit that "under the particular and specific facts of this case M2 Software adequately represents Escamilla's interests." *M2 Tech., Inc.*, 589 F. App'x at 675. As to the nature of Escamilla's relationship with M2 Software, Inc., the Fifth Circuit clearly stated that "Escamilla has the same ultimate objective as M2 Software: He is its sole shareholder and has exclusive control over it, and M2 Software's purpose is to deliver a profit to Escamilla." *Id.* The Court finds that there could be no more succinct a description of privity.

"A non-party ... is adequately represented where a party in the prior suit is so closely aligned to her interests as to be her virtual representative." *Eubanks v. F.D.I.C.*, 977 F.2d 166, 170 (5th Cir. 1992). There was no question in the Second Suit that Escamilla "completely controls M2 Software." *M2 Tech., Inc.*, 589 F. App'x at 675. For this District Court to now hold otherwise would be contrary to the clear findings of the Fifth Circuit in affirming the Court's judgment in the Second Suit.

Further, as noted by Defendant in its motion, Plaintiff states in his complaint in this Third Suit that he "wholly-owns and controls" M2 Software, Inc. Dkt. 1 at 3. Indeed, the entire framing of his complaint in this matter seeks to convince the Court of his more than 20-year alignment with

10

M2 Software, Inc. and the M2 mark. *Id.* Defendant also cites to a March 15, 2012 Declaration

submitted by Escamilla in the First Suit declaring under the penalty of perjury that:

> 4.　　I am 100% owner of the M2S[2] sub-entity and I am the sole shareholder
> and sole officer of M2S. I am creator, developer, and economic owner of
> all products, services, and trade entities formed using the M2IP.[3] There is
> no requirement of joinder, as M2S is a wholly-owned subentity that did
> not file a lawsuit and cannot afford to do so and has provided necessary
> authorization to myself (in true name or as M2IPA[4] sole proprietorship) as
> IP legal representative entity, within the meaning of 15 U.S.C. § 1127.
> M2S is actively participating and providing assistance in this case through
> myself. As shown from documents upon which Defendant has relied
> (such as Docket 53-5, 53-6, 53-7, 53-8, 53-9), I have met the requests of
> Defendant M2 Technology, Inc. ("Defendant") and the Court of
> submitting M2S unredacted contracts, under seal. For avoidance of doubt,
> I fully acknowledge that I am a direct privy of M2S, and state as corporate
> officer that M2S is a direct privy of myself, for purposes of *res judicata*.

*See* Dkt. 93-8 (*citing to* Dkt. 71-1 in 4:11cv516, the First Suit).

Defendant also cites to the Trademark Assignment Agreement in which Escamilla claims to

be the successor to M2 Software, Inc.'s rights. *See* Dkt. 93-7. Escamilla's claim that "the parties

are not privies of one another *with respect to the subject trademark*, with no shared legal interest

post-assignment" because "Plaintiff is the *sole owner* of the trademark whereas M2 Software holds

no legally cognizable interest in the trademark" (Dkt. 109 at 12) (emphasis in original) is not

supported by any authority and does not alter the Court's privity analysis. Nor does the fact that

---

[2]Escamilla defines M2S as M2 Software, Inc. Dkt. 71-1 at ¶3 in 4:11cv516.

[3]Escamilla states "[w]ith respect to the **M2**® trademark and trade name intellectual property assets subject of this lawsuit, this IP is referenced herein as the 'M2IP.'" Dkt. 71-1 at ¶2 in 4:11cv516.

[4]Escamilla defines M2IPA as M2 Intellectual Property Assets. Dkt. 71-1 at ¶2 in 4:11cv516.

Escamilla's statement in his declaration was made in March 2012 – prior to the filing of this suit. Escamilla is bound by his willful conduct, both in his action and inaction, in all three suits.

Escamilla controlled Plaintiff's interests in the First Suit, Defendant's interests in the Second Suit and Plaintiff's interests in this Third Suit; his interests have been adequately represented in all three suits. By his own actions and words – not to mention his repeated and adamant attempts at *pro se* participation on behalf of the corporate entity – Escamilla's privity with M2 Software, Inc. from the inception of the First Suit is clear. Escamilla knowingly made the bed in which he finds now himself.

Plaintiff argues that this Court's denial of his request to intervene in the Second Suit precludes the application of *res judicata* here. The Court agrees that had Plaintiff not been in clear privity with M2 Software, Inc., the denial of his motion to intervene would preclude the *res judicata* effect of the judgment in the Second Suit. *See Int'l Union UAW v. Scofield*, 382 U.S. 205, 213, 86 S. Ct. 373, 379, 15 L. Ed. 2d 272 (1965). Such is not the case here.

While the Court in *Scofield* did find that a party who is denied the right to intervene in an underlying administrative proceeding would not be bound by the decision made, there is no discussion within the *Scofield* opinion as to whether the party seeking to intervene was in privity with the parties. Indeed, the Supreme Court states that the attempted intervenor would not be bound based on "technical *res judicata* rules" – these technical rules inherently involve the same parties or those in privity. *Id.*

Plaintiff has not cited to any authority that would show that, even when denied a right to intervene, an individual whose rights were specifically found to be adequately represented, could not

be found to be in privity with a party to a suit. As the Fifth Circuit noted in its discussion of the legal authorities regarding intervention and the award of attorney's fees in the Second Suit, "none involves situations like the one at issue here—a proposed intervenor whose interests are ***completely aligned*** with those of the defendant." *M2 Tech., Inc.*, 589 F. App'x at 677 (emphasis added). The Court finds that the same holds true as to the authorities cited by Escamilla regarding *res judicata* and intervention. He has cited to no authority involving *res judicata* and a proposed intervenor whose interests are completely aligned who can avoid the application of *res judicata*. For these reasons, the Court finds that Escamilla's argument that preclusion does not apply where it forecloses the proposed intervenor's constitutional due process rights is equally unavailing.

Where "the party seeking to intervene has the same ultimate objective as a party to the suit, the existing party is presumed to adequately represent the party seeking to intervene unless that party demonstrates adversity of interest, collusion, or nonfeasance." *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1288 (5th Cir.1987). Such was the case with Escamilla and M2 Software, Inc. in the Second Suit and warrants a finding of privity here.

That the Court stated in its report and recommendations denying Escamilla's request to intervene in the prior suit that Plaintiff had "already filed another suit in this District and whatever rights he may have can be addressed in that proceeding" (*see* Dkt. 23 at 8 in Second Suit, 4:12cv458) does not alter the Court's *res judicata* analysis. Notably, in that same report and recommendations, this Court also noted:

> In any event, the assignment gives Escamilla no greater rights than what M2 Software, Inc. possessed before the assignment. If there was no infringement, ***then Escamilla is bound***. As stated, M2 Software, Inc. ***can adequately protect***

13

**whatever rights he may have had.**

*Id.* at 7-8 (emphasis added).

Further, the Court made those findings in the Second Suit prior to the entry of final default judgment. At that time, Defendant M2 Software, Inc. still had the opportunity to appear through counsel to avoid the entry of default against it. It chose not to do so and now must face the consequences of its decision.

The Court notes that Plaintiff's complaint names John Does 1 through 20 as Defendants. Dkt. 1 at 2. Plaintiff alleges they are "a parent, subsidiary, officer, employee, agent, or other affiliate of Defendant M2 Technology, Inc., and responsible in some manner for Plaintiff's damages." *Id.* Plaintiff has offered no summary judgment argument[5] or authority to show how these Doe Defendants would not be in privity with the parties to this suit, and the Court declines to consider them further in its privity analysis.

There is no question that the parties in this suit and the Second Suit were identical or in privity for purposes of *res judicata*.

<u>Same Claim or Cause of Action</u>

As to the final element of the *res judicata* analysis, the Court finds Plaintiff's claims here are based on the same nucleus of operative facts or series of connected transactions, out of which the claims in the Second Suit (and the First Suit for that matter) arose. In this action, Escamilla argues that M2 Technology, Inc.'s use of M2 and M2 TECHNOLOGY creates a likelihood of confusion,

---

[5]The only mention made in Escamilla's summary judgment briefing as to these Defendants is to argue that parties are not the same in both suits. *See* Dkt. 109 at 12. This is not enough to challenge a finding of privity.

in violation of certain provisions of the Lanham Act, the Texas Business and Commerce Code, and Texas Common Law.  Conversely, in the Second Suit, M2 Technology, Inc. sought (and obtained) a declaration that its use of M2 and M2 TECHNOLOGY *does not* create a likelihood of confusion and therefore, that there is no violation of the Lanham Act or the Texas Business and Commerce Code, or of Texas Common Law.  As argued by Defendant, [t]he claims in the two actions are perfectly symmetrical, except of course for the reverse nature of the relief sought."  Dkt. 117 at 5.  The Court agrees.

In his complaint in this Third Suit, Plaintiff asserts the following claims: (1) Unfair Competition and False Designation of Origin as to the use of an M2 trademark or brand, in violation of 15 U.S.C. §1125(a); (2) Trademark Infringement, as to use of M2 mark, in violation of 15 U.S.C. §1114, *et seq*.; (3) Trade Name Infringement, as to use of an M2 mark, in violation of 15 U.S.C. §1125(a); (4) Violation of Anti-Cybersquatting Consumer Protection Act, as to use of M2 URL's, in violation of 15 U.S.C. §§ 1125(d)(1)(A), 1117(d); (5) Common Law Trademark Infringement and Unfair Competition under Texas common law; (6) Injury to Business Reputation and Trade Name, in violation of Section 16.29 of the Texas Business and Commerce Code; and (7) False, Misleading or Deceptive Acts in violation of Section 17.41 of the Texas Business and Commerce Code.  *See* Dkt. 1.  Plaintiff also requests injunctive relief and, although he was *pro* se when he filed the complaint, an award of attorneys' fees.  *Id.*

In the Second Suit, the Court entered the following declaratory judgment for Plaintiff M2 Technology, Inc. against M2 Software, Inc. finding that:

"(1)     Plaintiff's use of M2Technology, Inc. in connection with Plaintiff's services does not constitute federal unfair competition or false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

(2)     Plaintiff's use of M2 Technology, Inc. in connection with Plaintiff's services does not constitute federal trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114 *et seq*;

(3)     Plaintiff's use of M2 Technology, Inc. in connection with Plaintiff's services does not constitute trade name infringement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

(4)     Plaintiff's use of M2 Technology, Inc. in connection with Plaintiff's services does not violate the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d);

(5)     Plaintiff's use of M2Technology, Inc. in connection with Plaintiff's services does not constitute trademark infringement or unfair competition under Texas common law;

(6)     Plaintiff's use of M2 Technology, Inc. in connection with Plaintiff's services does not violate § 16.29 of the Texas Business and Commerce Code; and

(7)     Plaintiff's use of M2 Technology, Inc. in connection with Plaintiff's services does not violate § 17.41 of the Texas Business and Commerce Code."

Dkt. 47 in 4:12cv458, Second Suit.  M2 Technology, Inc. was also awarded its reasonable attorneys' fees and costs in the amount of $77,754.08.  *Id.*

Courts "apply a transactional test in determining whether two suits involve the same claim, where the critical issue is whether the plaintiff bases the two actions on the same nucleus of operative facts."  *Ellis v. Amex Life Ins. Co.*, 211 F.3d 935, 938 (5th Cir. 2000) (internal quotations omitted).  All three suits arise out of the same nucleus of operative facts, and the claims in the Third Suit either were litigated or should have been litigated in the Second Suit.

The Court notes that, with the exception of Escamilla's request for injunctive relief, the causes of action asserted in this Third Suit – a suit Escamilla attempts to distinguish by arguing that it is coercive rather than declaratory – are identical to the declarations made in the Final Judgment in the Second Suit, even in the order in which they are presented. Defendant has even cited to portions of the record where Escamilla himself has characterized the two lawsuits as mirror-images of one another. *See* Dkts. 93-9; 93-10; 93-11. There is no question that the cases involve the same claims or causes of action. The Court finds that all of Plaintiff's claims are barred by *res judicata*.

Escamilla has argued that the United States Supreme Court's opinion in *B&B Hardware, Inc.* is an "intervening decision" that destroys the *res judicata* effect of the final judgment in the Second Suit. *See* Dkt. 109 at 24-27 (citing *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1303, 191 L. Ed. 2d 222 (2015)). In *B&B Hardware, Inc.*, the Supreme Court addressed the circumstances under which a decision by the Trademark Trial & Appeal Board of the U.S. Patent & Trademark Office can have preclusive effect in later district court litigation. The *B&B Hardware* opinion makes no mention of default judgments whatsoever. The final judgment in the Second Suit was entered because M2 Software, Inc. deliberately defaulted; the judgment did not address any proceedings before the USPTO. The case has no bearing on the finality of the judgment in the Second Suit as it pertains to the Court's *res judicata* analysis in this case.

The Court notes that Plaintiff's summary judgment response argues that Defendant's motion is premature under Federal Rule of Civil Procedure 56(d). Plaintiff argues that he should be permitted certain discovery and that his non-exclusive licensee of the subject trademark, M2 Software, Inc., has moved to set aside the default judgment in the prior suit.

As to Plaintiff's request that the Court make findings in this case as to "likelihood of confusion," such is not the purpose of Defendant's motion. The scope is narrow – whether *res judicata* has a preclusive effect as to Plaintiff's claims in this case given the final judgment in the Second Suit. Evidence regarding likelihood of confusion or other merit-based issues is not essential to the Court's determination of *res judicata*. *See* FED. R. CIV. P. 56(d) (allowing a court to defer consideration of a motion for summary judgment when a party cannot present facts "essential to justify its opposition.").[6] In fact, it is not relevant at all.

As to any challenges made by M2 Software, Inc. to the grant of default judgment in the Second Suit – even assuming they are challenges over which the District Court still has jurisdiction in that suit – have no bearing on the Court's *res judicata* analysis in this case. "[E]ven an incorrect judgment is entitled to *res judicata* effect." *Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 500 (5th Cir. 2004) ("The proper remedy for an allegedly erroneous judgment is direct appeal to the proper court, not an attempt to avoid the *res judicata* effect of that judgment in another suit against the same party for the same cause of action."). *See also* FED. R. CIV. P. 60 (c)(2) (a rule 60 motion for relief from judgment "does not affect the judgment's finality or suspend its operation."). Escamilla's attempts to undermine the final default judgment in the Second Suit have no effect in this case.[7]

---

[6]For this reason, the Court entered an order striking Escamilla's motion to re-urge discovery motions as well as his motion for summary judgment on the issue of likelihood of confusion as to the underlying mark, finding that such motions were premature and did not pertain to the issue of *res judicata*. *See* Dkt. 116.

[7]The Court also notes that the Fifth Circuit addressed and rejected many of these arguments in its opinion affirming the final default judgment in the Second Suit.

In its motion, Defendant also requests an injunction prohibiting Escamilla, M2 Software, Inc., or any person or entity owned by, controlled by, or in privity with any of them from filing any new civil action in this District against M2 Technology, Inc. without first obtaining court permission to do so. As noted in Defendant's summary judgment reply, Escamilla's summary judgment response does not address or challenge this request in any way. Because only Escamilla is a party to this Third Suit, the Court will limit only the future filings made by him.[8] There being no opposition,[9] and for good cause shown, it is thus recommended that an order be entered that, before filing any other suits in this District against M2 Technology, Inc., David Escamilla must first seek leave of Court to do so. *See* E.D. TEX. L.R. CV-11(f) ("The court may make orders as are appropriate to control the conduct of a vexatious pro se litigant."). If Escamilla violates the order and if his conduct is found to be vexatious and harrasing, he should be required to pay the costs and attorneys' fees of M2 Technology, Inc. *See* E.D. TEX. L.R. CV-65.1.

Escamilla was repeatedly warned of the consequences of his attempts to represent the corporate Defendant *pro se.* These warnings were made in not one but two prior suits. The District Court's rulings in both the First Suit and Second Suit were affirmed by the Fifth Circuit Court of Appeals. Escamilla cannot have it both ways by maintaining this Third Suit on the same subject matter. Such could result in duplicative litigation and inconsistent judgments, the exact result which

---

[8]This is not to say, however, that M2 Software, Inc. does not also face the possibility of sanctions. Because M2 Software, Inc. may only appear through counsel, any future filings made will be subject to Federal Rule of Civil Procedure 11 and other ethical mandates.

[9]*See* E.D. TEX. L.R. CV-7(d) ("In the event a party fails to oppose a motion in the manner prescribed herein, the court will assume that the party has no opposition.").

the principle of *res judicata* seeks to avoid. To find otherwise in this suit would essentially allow Escamilla an end-around his refusal to join M2 Software, Inc. as a necessary party in the First Suit and it would allow the corporate party M2 Software, Inc. (wholly controlled by Escamilla) an end-around the consequences of its refusal to retain counsel in the Second Suit. Such is contrary to the principles of *res judicata* and all governing authorities.

**RECOMMENDATION**

Defendant's Motion for Summary Judgment (Dkt. 93) should be GRANTED, Plaintiff David Escamilla should take nothing by any of his claims here as they are barred in their entirety by *res judicata*, and Defendant should be awarded its costs herein. Further, it should be ordered that, before filing any other suits in this District against M2 Technology, Inc., David Escamilla must first seek leave of Court to do so.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.; Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc),

*superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

All other case deadlines remain abated pending the District Judge's consideration of this report and recommendation.

**SIGNED this 31st day of August, 2015.**


_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE